UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DESTINY RICHARDSON-GRAVES, | : | CIVIL NO: 1:14-CV-00155 |
| Plaintiff | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| EMPIRE BEAUTY SCHOOL, *et al.,* | : | |
| | : | |
| Defendants | : | |
| | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

After an altercation with a fellow student, the plaintiff, Destiny Richardson-Graves, was suspended and then terminated from Empire Beauty School. Richardson-Graves filed this action raising a number of state-law claims as well as federal constitution claims arising from the termination of her beauty school education.   The problem, however, is that Richardson-Graves has sued private entities who cannot be held liable for constitutional violations.   Thus, the complaint fails to state federal constitutional claims, and we recommend that the federal claims be dismissed.  Because we recommend that the federal claims be dismissed, we also recommend that the Court decline to exercise supplemental jurisdiction over the state-law claims and that the Court remand those claims to the state court.

## II.  Background and Procedural History.

Richardson-Graves began this action in the Court of Common Pleas of Dauphin County, Pennsylvania in December of 2013.[1]  The complaint names as defendants the following entities and individuals: (1) Empire Beauty School; (2) Jacolyn Patton, the executive director of Empire Beauty School; (3) Empire Education Group; (4) Delia Sube, the President of Empire Education Group; and (5) the National Accrediting Commission of Career Arts & Sciences (NACCAS).

Richardson-Graves alleges that she attended Empire Beauty School for a little more than a year during which time she maintained regular attendance and above average grades.  She alleges that she had no disciplinary infractions or problems with staff or with other students with the exception of one other student who harassed and attempted to bully her.  According to Richardson-Graves, she made several attempts to inform staff about this student, but she was told to just ignore the other student, and defendant Patton told Richardson-Graves and the other student to stay away from each other.  At the end of one day in February of 2012, a loud verbal argument broke out between Richardson-Graves and the other student, who had taunted Richardson-Graves.  The argument was loud, and threats such as "bitch I'll kick your ass" were made by one or the other of the students.

[1] We note that this is not the first case filed by Richardson-Graves about her termination from Empire Beauty School.  She also filed *Richardson-Graves v. Empire Beauty School*, 1:13-CV-00525 (M.D. Pa.).  That case is still pending.

Richardson-Graves alleges that while there never was any physical confrontation, she and the other student were in close proximity, and two teachers were needed to separate them.

On her way home after the altercation, Richardson-Graves received a phone call from defendant Patton telling her that she was suspended from school. Richardson-Graves asked Patton if the other student had also been suspended, and Patton told her not worry about that.  Richardson-Graves then said that she was coming back to the school the next day to get her things and see if the other student was suspended.  Patton asked if that was a threat, and Richardson-Graves said: "It's not a threat, I'm just coming back to see."  According to Richardson-Graves, Patton said she was construing what was said as a threat and that Richardson-Graves was terminated from Empire Beauty School.

Richardson-Graves alleges that her mother went to the school the next day and spoke to Patton, who held fast in her decision to terminate Richardson-Graves from the school.  According to Richardson-Graves, her mother and grandparents contacted higher authorities at Empire Education Group, to no avail.  Richardson-Graves then wrote a letter to defendant Sube in an attempt to appeal and/or exhaust any remedies with respect to her termination, but Sube upheld the termination. Richardson-Graves then submitted a letter to NACCAS attempting to appeal the decision terminating her from Empire Beauty School.  That too was to no avail.

Richardson-Graves contends that she was never provided an opportunity to tell her side of the story prior to being suspended and terminated and that she was denied fair hearing procedures and an opportunity to be heard after her termination.

In her complaint, Richardson-Graves presents a number of state-law claims such as breach of contract, conflict of interest, negligence, and intentional infliction of emotional distress.  Richardson-Graves also claims that the defendants violated the Fifth and Fourteenth Amendments by denying her due process.  As relief, Richardson-Graves is seeking declaratory and injunctive relief as well as compensatory and punitive damages.

In January of 2014, NACCAS removed the case to this court.   NACCAS then filed a motion to dismiss the complaint.  Defendants Empire Beauty School, Empire Education Group, Patton, and Sube (the Empire defendants) filed a separate motion to dismiss.  We now address those motions, which have been fully briefed.

## III. Discussion.

### A.  Motion to Dismiss and Pleading Standards.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as

true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012).  "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009).  The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).  Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).  Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B.  Motion to Dismiss Based on the Arbitration Clause in the Enrollment Agreement.

The Empire defendants contend that the complaint should be dismissed and Richardson-Graves should be compelled to arbitrate her claims against them.  They rely on an arbitration clause in the Enrollment Agreement between Richardson-Graves and EEG, Inc. t/a Empire Beauty School, which agreement Richardson-Graves attached to her complaint.  In response, Richardson-Graves argues that the

arbitration clause is not clear, is a contract of adhesion, and is unconscionable.  The

Empire defendants do not respond to these arguments.[2]

A dismissal based on a valid arbitration agreement is generally effected

under either Fed.R.Civ.P. 12(b)(6) or Fed.R.Civ.P. Rule 56. *Defillipis v. Dell Fin.*

*Servs.*, 3:14-CV-00115, 2014 WL 4198015, at *1 (M.D. Pa. Aug. 22, 2014).  The

Third Circuit has set forth when a motion seeking to compel arbitration should be

decided under the motion to dismiss standard of Rule 12(b)(6) and when it should

be decided under the summary judgment standard of Rule 56:

> To summarize, when it is apparent, based on "the face of
> a complaint, and documents relied upon in the complaint," that
> certain of a party's claims "are subject to an enforceable
> arbitration clause, a motion to compel arbitration should be
> considered under a Rule 12(b)(6) standard without discovery's
> delay." *Somerset,* 832 F.Supp.2d at 482.  But if the complaint
> and its supporting documents are unclear regarding the
> agreement to arbitrate, or if the plaintiff has responded to a
> motion to compel arbitration with additional facts sufficient to
> place the agreement to arbitrate in issue, then "the parties

---

[2] In their reply brief, the Empire defendants argue that Richardson-Graves is
attempting to base her breach of contract claim on the doctrine of
unconscionability and that she cannot do so because unconscionability is not an
independent cause of action.  This misconstrues Richardson-Graves's argument—
which is not that she has an independent cause of action based on
unconscionability, but that the arbitration clause is unenforceable because it is
unconscionable.  The Empire defendants also contend even if the doctrine of
unconscionablity could support a contract cause of action, Richardson-Graves
could not use it in this case because she signed the Enrollment agreement and she
has not alleged that she was coerced into doing so or that she lacked any
meaningful choice in deciding to enter into the agreement.  These arguments are
also not tailored to the issue of whether the arbitration clause, rather than the entire
contract, is unconscionable.

> should be entitled to discovery on the question of arbitrability
> before a court entertains further briefing on [the] question." *Id.*
> After limited discovery, the court may entertain a renewed
> motion to compel arbitration, this time judging the motion
> under a summary judgment standard.

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir.

2013).

Here, the Empire defendants have not responded to Richardson-Graves's

arguments about the arbitration clause's applicability and enforceability.  While

Richardson-Graves's arguments in this regard may ultimately prove unavailing,

given the lack of adequate briefing on the issue and the fact that Richardson-

Graves may need discovery to prove her contentions regarding the enforceability

of the arbitration clause, we conclude that it would be premature to dismiss the

claims against the Empire defendants based on the arbitration clause at this point in

the proceedings.


### C.  The Complaint Fails to State a Federal Constitutional Claim Upon Which Relief Can Be Granted.

Richardson-Graves presents due process claims under both the Fifth

Amendment and the Fourteenth Amendment.  Because we conclude that

Richardson-Graves has not alleged facts from which it could reasonably be

inferred that the defendants acted either under color of state law or under color of

federal law, we conclude that the complaint fails to state a due process claim upon which relief can be granted.

Richardson-Graves's Fourteenth Amendment claim is brought under 42 U.S.C. § 1983.  "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.*  To establish a claim under § 1983, the plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).  The requirement that a defendant act under color of state law is essential in order to establish a claim under § 1983. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Richardson-Graves's Fifth Amendment claim is a *Bivens* claim. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).  In *Bivens*, the Supreme Court recognized a private cause of action to recover damages against a federal agent for violations of constitutional rights.  "A *Bivens* action, which is the federal equivalent of the [42 U.S.C.] §1983 cause of

action against state actors, will lie where the defendant has violated the plaintiff's rights under color of federal law." *Brown v. Philip Morris Inc.,* 250 F.3d 789, 800 (3d Cir. 2001).

### 1.  Color of State Law.

"Action under color of state law 'requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Harvey v. Plains Twp. Police Dept.*, 635 F.3d 606, 609 (3d Cir. 2011)(quoting *Abbott v. Latshaw,* 164 F.3d 141, 146 (3d Cir.1998)).  The Supreme Court has established a number of approaches to the question of when a private person acts under color of state law. *Crissman v. Dover Downs Entertainment, Inc.*, 289 F.3d 231, 239 (3d Cir. 2002). The United States Court of Appeals for the Third Circuit has "outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) 'whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state'; (2) 'whether the private party has acted with the help of or in concert with state officials'; and (3) whether 'the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.'" *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009)(quoting *Mark v. Borough of Hatboro*, 51 F.3d

1137, 1141 (3d Cir. 1995)).  "The inquiry is fact-specific," *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995), and "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Academy v. Tennessee Secondary School Athletic Assoc.,* 531 U.S. 288, 295 (2001)(quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351 (1974)).

The defendants contend that they are not state actors, and Richardson-Graves has not alleged facts from which it can reasonably be inferred that the defendants acted under color of state law.  While Richardson-Graves appears to accept that the defendants are private individual and entities, she asserts in her brief that they were acting under color of state law for a number of reasons.  None of her asserted reasons, however, have merit.

First, Richardson-Graves contends that the defendants were acting under color of state law because they were performing a traditional public function—education.  But "the relevant question is not simply whether a private group is serving a "public function." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982). Rather, "the question is whether the function performed has been 'traditionally the *exclusive* prerogative of the State.'" *Id.* (quoting *Jackson,* 419 U.S. at 353).  "That a private entity performs a function which serves the public does not make its acts

state action." *Id.*  Here, Richardson-Graves has not alleged, nor could she have

reasonably alleged, that cosmetology education is a function that has been

traditionally the exclusive prerogative of the state. *See generally, Rendell-Baker,*

457 U.S. at 842 (holding the education of maladjusted high school students is not

the exclusive province of the State); *Stone v. Dartmouth Coll.,* 682 F. Supp. 106,

109 (D.N.H. 1988)("Providing post-secondary education is not and has never been

the exclusive prerogative of either the federal government or the individual

states.").  Accordingly, Richardson-Graves's argument that the defendants were

acting under color of state law because they were performing a traditional public

function fails.

Richardson-Graves also alleges that Empire Beauty School is licensed under

the State Board of Cosmetology and is subject to the laws and provisions of that

Board and of Pennsylvania.  But the mere fact an entity is licensed by the state is

"not enough to make a private entity a state actor." *Crissman*, 289 F.3d at 243

(citing *Moose Lodge v. Irvis,* 407 U.S. 163, 176 (1972)).  Further, the fact that an

entity is subject to governmental regulation does not mean that the entity is a state

actor. *See Jackson v. Metro. Edison Co.,* 419 U.S. 345, 350 (1974) (holding that

heavily regulated utility company was not a state actor); *see also Ecudero-Aviles v.*

*Milton Hershey Sch.*, 1:11-CV-1858, 2012 WL 113660, at *3 (M.D. Pa. Jan. 13,

2012)("While private schools are regulated by the state, the fact that private parties

are regulated by the state does not convert them into state actors."). Thus, the fact that Empire Beauty School is licensed by the state and subject to state regulation is insufficient to show that it was acting under color of state law.

Richardson-Graves also cites to parts of the Pennsylvania Public School Code and to a definition section of another Pennsylvania statute that defines a local agency. Those statutes, however, do not support an inference that the defendants were state actors or acted under color of state law.

While "challenged activity may be state action when it results from the State's exercise of 'coercive power'" or "when the State provides 'significant encouragement, either overt or covert,'" *Brentwood Academy,* 531 U.S. at 296 (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982)), Richardson-Graves does not allege facts from which it can reasonably be inferred that the alleged violation of her rights was the result of such. She does not allege that Pennsylvania forced or encouraged the defendants' behavior. In fact, she seems to suggest that the defendants failed to comply with state regulations. Noncompliance with state law, however, does not turn a private defendant into a state actor. *See Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 172 (3d Cir. 2004).

Richardson-Graves also alleges that students of Empire Beauty School received federal financial assistance under Title IV of the Higher Education Act of 1965, and she alleges that she received federal financial aid in the form of a Pell

Grant and a Stafford Loan.  But the receipt of federal funds is not relevant to

whether the defendants acted under color of state law. *See Berrios v. Inter Am.*

*Univ.,* 535 F.2d 1330, 1332 (1st Cir. 1976)("The district court properly refused to

take into account financial assistance from the federal government in considering

the presence of state action."); *Rosario de Leon v. Nat'l Coll. of Bus. & Tech.,* 663

F. Supp. 2d 25, 34 (D.P.R. 2009)("Furthermore, the fact that National College is a

recipient of Federal funds is of no consequence, since the issue before the Court is

the nexus/joint action between National College and the State, not the federal

government.").

Finally, Richardson-Graves argues that the defendants are pervasively

entwined with the government, and she cites *Brentwood Academy,* 531 U.S. 288

(2001).  In that case, "the Court held that an interscholastic athletic association was

entwined with the state where the great majority of the association's member

schools were public, representatives of the schools acting in their official capacities

selected members of the association's governing bodies, state officials also sat on

those bodies in an ex officio capacity, the association was largely financed by gate

receipts from member-school tournaments, and association employees participated

in the state retirement system." *Benn*, 371 F.3d at 172-73 (3d Cir. 2004)(citing

*Brentwood,*531 U.S. at 298-300).  In this case, Richardson-Graves does not allege

15

facts supporting an inference the defendants were entwined with the State in the sense set forth in *Brentwood.*

In sum, Richardson-Graves has not alleged facts supporting an inference that the defendants were acting under color of state law.  Additionally, her arguments in her brief regarding the issue are without merit.

### 2. Color of Federal Law.

The same general criteria are used to determine whether a party acts under color of federal law as are used to determine whether a party acts under color of state law. *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983).

Richardson-Graves alleges that although NACCAS is not a part of the government, it is in partnership or entwined with the government by providing a statutory right, i.e., a "fair and equal education to all citizens." *Doc. 1-3* at 10. Citing 34 C.F.R. § 602.25, Richardson-Graves also alleges that NACCAS is subject to law and regulations set forth by the Department of Education, which provide that an accrediting agency must ensure that its schools satisfy due process requirements.  34 C.F.R. § 602.25, however, addresses what process an accrediting agency must provide to its member schools in order to be recognized by the Department of Education, not what process its member schools must provide to students.  Further, as discussed before, the fact that an entity is subject to

governmental regulation does not mean that the entity is a governmental actor. *See Jackson,* 419 U.S. at 350 (holding that heavily regulated utility company was not a state actor).  Thus, the fact that NACCAS is subject to regulation by the Department of Education is not sufficient to establish that it acted under color of federal law.

Richardson-Graves also cites to 34 C.F.R. § 100.13, a definition section under Title VI of the Civil Rights Act.  But this does not help Richardson-Graves as she presents due process claims, not a claim under Title VI.

As set forth above, Richardson-Graves also alleges that students of Empire Beauty School received federal financial assistance under Title IV of the Higher Education Act of 1965, and she alleges that she received federal financial aid in the form of a Pell Grant and a Stafford Loan.  But that students of the institution receive federal financial assistance is insufficient to show governmental action. *See Langadinos v. Appalachian Sch. of Law*, 1:05CV00039, 2005 WL 2333460 (W.D. Va. Sept. 25, 2005)("Nor is participation in federal student loan programs any indication that ASL is a governmental actor."); *Fischer v. Driscoll*, 546 F. Supp. 861, 867 (E.D. Pa. 1982)("Courts facing the issue have concluded that governmental financial assistance in the form of student aid is not sufficient to make the educational institution a governmental actor.").

In sum, Richardson-Graves has failed to allege facts supporting an inference that the defendants were acting under color of federal law.  And, as with her arguments regarding the color of state law, her arguments in her brief regarding the issue are without merit.

### D.  Leave to Amend

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).  The court "must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." *Id.*  Here, Richardson-Graves has not alleged facts supporting an inference that the defendants were acting under color of state or federal law.  Further, although she presented numerous arguments in her brief regarding whether the defendants were acting under the color of law, none of those arguments have merit.  Also, as noted earlier, Richardson-Graves has another, earlier-filed case pending that raises substantially the same due process claims.  Under these circumstances, granting Richardson-Graves leave to amend would not be appropriate.

**E.  The Court Should Decline to Exercise Supplemental Jurisdiction Over the State-Law Claims.**

Having determined that the complaint fails to state a federal claim upon which relief can be granted, the remaining claims are state-law claims over which this court has supplemental jurisdiction.  We recommend that the Court decline to exercise supplemental jurisdiction over the state-law claims, and that the Court remand the state-law claims to the state court.

Whether to exercise supplemental jurisdiction is within the discretion of the court.  28 U.S.C. § 1367(c)(3) provides that district courts may decline to exercise supplemental jurisdiction over a state-law claim if the district court has dismissed all claims over which it has original jurisdiction.  When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)(quoting *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350 (1988)).  The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Miflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

19

There is nothing unique about this case such that considerations of judicial economy, convenience, and fairness provide an affirmative justification for exercising supplemental jurisdiction after the court disposes of the federal claims. Accordingly, we recommend that the court decline to exercise supplemental jurisdiction over the state-law claims, and we recommend that the Court remand those claims to the Court of Common Pleas of Dauphin County.[3] *See Carnegie-Mellon,* 484 U.S. at 351-53 (holding that in a removal action a district court has discretion to remand to the state court state-law claims over which it declines to exercise pendent jurisdiction and indicating that remand is often preferable to dismissal).

## IV.  Recommendations.

Accordingly, for the foregoing reasons, it is recommended that the defendants motions (docs. 4 & 6) to dismiss the complaint be granted to the extent that the federal claims be dismissed.  It is further recommended that the state-law claims be remanded to the Court of Common Pleas of Dauphin County, Pennsylvania.

---

[3] Upon remand, the Dauphin County Court of Common Pleas can decide at the appropriate time whether to compel arbitration of the state-law claims.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 5th day of September, 2014.

**_S/Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge